The next case then is case number 184-119 United States v. RaPower. Yes. We're ready to hear you. Denver Snuffer appearing on behalf of the appellants. I've taken note of the acoustics in this courtroom. We thank you for that. I mean I wonder sometimes, I can't hear you. We don't understand you. There's not much you're doing for your client except filling time. This is architecturally beautiful and an impediment to communication. It's a pediment all right, go ahead. The judgment that was awarded against my clients is unquestionably a penalty. The amount exceeds every deposit into every account of every defendant over the entirety of the time period. The government chose to present three different flawed methodologies and the district court elected not to use any of those that the government presented. Instead the court chose to use the sum of a column in an He didn't understand the database. He did not know if it represented lens sales. He did not know if it represented collections. He did not know if it represented deposits. So which issues do you bring to us for our consideration? Let's prioritize these. Are you then start, are you talking about the size of the judgment or the fact of the judgment? The problem is that these issues are rather like dominoes. You're talking about issue two, the disgorgement sum, correct? Correct. However, if the disgorgement is a penalty, then number one, the government is not allowed in an equitable disgorgement case to seek a Then we are entitled to a jury, which we did not get in the lower court. The quality of the proof also goes into the damage calculation because quite frankly, a column that says an order is placed does not mean that the person placing the order ever pays for it. Both the government and the judge acknowledged, as we've cited on the record, that many of the orders were never paid for because the amount of the damage is penal. We should have been entitled to get a jury, but the jury that was originally requested in this case was denied the defendants because the magistrate judge dealing with the issue stated in her order, the sticking point is the possibility of penalties. At oral argument, defense counsel represented that they would waive their right to a jury if the government would stipulate to not seek a penalty. Don't you have a to persuade us that your motion was timely before we look at the merits of the argument, the timeliness of that is based upon the very same order I'm reading for. All right, tell us why it was timely, the order removing the jury and by the way, the government concedes that we had made a timely request for a jury at the outset of the case. They state that in their brief. The jury was part of this case until removed. When it was removed, the magistrate judge said, based upon this timeless principle in our jurisprudence, the court will allow defendants to make a motion for a jury trial if penalties become part of this case. On February the 9th, the government in pretrial disclosures raised the alarm bells that this looked like it was headed to penalties and on February the 9th, we filed our motion to reinstate the jury. You can't be more timely than the same date. By February the 26th, they then filed their proposed trial exhibits, which we saw for the first time, in which it was abundantly clear that they were, in fact, asking for penalties and it wasn't until March the 3rd that the court said, we're denying the reinstatement of the jury that you once had because you didn't have the right to a jury trial. Your motion was untimely. I don't think we could have been any more timely. The argument the government makes is that we should have moved a year earlier. We had no basis to file a motion and, indeed, the magistrate judge gave us the right to file at any time if penalties become part of this case and penalties were only apparent when the government, contrary to all of their arguments and representations throughout the case, attempted to introduce evidence that was penal in nature. In June, June 16th of 2017, trying to hide the ball, the government was able to persuade the court to enter an order that states' defendants shall not depose any representative of the United States Department of Justice Tax Division. Normally, as a trial attorney, when deposing a specific individual or party is taken off the table, what that means is that that party cannot testify. You needn't be concerned about them because you can't depose them. This was an order entered at a time when we still had fact discovery open, when we still had expert discovery available to us, when we could have learned about what the government intended. Then, on March the 14th of 2018, the trial in this case began the next month in April, in March, mid-month, the court denied our motion to exclude the witnesses from the tax division that we were told we could not depose and said, parties shall meet and confer and make an attempt to find the time for defendants to depose Joanna Perez and Amanda Rankin only on the subject of the exhibits as to which they will testify and the preparation of those exhibits, neither deposition shall consume more than three hours. And so, literally, the day before the trial began, the final one of those depositions got taken. If you enter an order a year earlier and cut off my ability to learn about this, and then you realize the error when the government discloses that all of their witnesses are going to be paralegals in the employ of the tax division of the Department of Justice, it's really not a cure to say, take three hours and talk to them before trial, because at that point, what we learned about what they were intending to offer was something that had we learned it during discovery would have equipped us to take that information apart using expert witnesses, but we were not afforded that opportunity. I suspect, and I think it is hard for any advocate going up against the U.S. Department of Justice in a case involving taxes. I think there are a lot of assumptions and presumptions, perhaps rightly so, but if you change the name of the litigant to Salt Lake Sand and Gravel instead of the Internal Revenue Service, and you look at the quality of the evidence that they produced in the case, and you ask yourself, could any common litigant get away with hiding the ball, get away with offering evidence that doesn't bother to check against deposits, doesn't bother to look at the deposit information to see if it even represented a sale of a lens, who called witnesses that testified. Let me ask about that evidence. Yes. Did you object on those grounds at the time? Oh, yes, and we filed motions in limine. When we saw it coming, we asked that all of this evidence be excluded. When it was being produced, we objected. We moved to strike. We tried to keep this out. It was an ambush, but it was not an ambush we didn't resist. I realize there are burdens that have to be taken into account, but did you present any counter evidence on the disgorgement amount? We did not. We did not think the government met the burden of proving a reasonable approximation, and therefore the burden did not shift to us. We only have a burden to present evidence if they've made a reasonable approximation. And in their brief, I think this is not advocacy that deserves your sympathy or persuasion. I think this is an admission. They state the district court could have reasonably settled on a different approximation of defendants' gross receipts. The government readily acknowledged at trial that the evidence it presented could be construed in a number of ways to support a range of different amounts. We've briefed and pointed out all those different amounts and how inconsistent and irreconcilable they are. And I want to reserve the remainder of my time reserved. Thank you. Good morning, counsel. Good morning, Your Honor. May it please the court, my name is... Would you address the timeliness on the motion issue as to request for jury trial first, please? Yes, absolutely. The motion was filed more than eight months after the purported basis for the motion, which was the Supreme Court's decision in Kokesh. It was filed more than eight months after Kokesh was decided. It was filed three months after the motion's deadline, and it was filed less than two months before trial, right after the parties had just negotiated with the court a trial in which the dates would be split over several periods. Basically making a jury trial impractical. So it was untimely. The district court held that it was untimely and that that was a sufficient basis for denying the motion alone. And we review the district court's decision for abuse of discretion or under what standard? It's abuse of discretion. The decision to grant or deny a motion for a jury trial is reviewed for abuse of discretion. Well, no, I don't think that's right. We review the timeliness for abuse of discretion, but whether there was a right to a jury trial, if timely raised, is actually compelled by the court's decision, was it not? Whether there's a right to a jury trial is an issue of law, although there could be factual issues as well. That's right. But the court has discretion in whether to grant or deny a jury trial motion. The court doesn't have discretion on a timely jury demand. But the jury demand in this case was stricken by the magistrate, and no objections to that striking were filed. And so it's as if there was no jury demand. Counsel, turning to the disgorgement issue. Yes. I understand defendant's argument or defendant's appellant's claim to be the database relied upon for the reasonable approximation, or at least the database the government relied upon, was inaccurate and overinflated because it included customer accounts that were either unpaid or underpaid. Is that correct? That is my understanding of their argument. Well, is that correct, that it included customer accounts that were unpaid or underpaid, and yet it summed up the amount owing anyway? That's not correct, according to the record. So how did this work? How did that evidence show a reasonable approximation? So the evidence, you have essentially this database, and it lists sales, and it lists the price for each lens that was sold, and it tells you how many lenses were sold. I think what the other side is talking about is there's a column or a field in the database for comments. And there are some comments on some of the orders that indicate there's an amount due, and then there's others that have comments that say paid in full, and then there's others that have comments that don't have any comments at all, and there's others that have comments that say other things. And we don't know the significance of those comments, and the other side declined the opportunity to call a witness to explain them. So the court certainly was justified in not trying to credit specifically what those comments meant, but in basing the determination on the database, which was consistent with the amount that you get based on just the number of lenses they say were sold and the lowest price that they ever charged for those lenses. So you get about the same number. The database number is about the same as the number you would get just by multiplying the number of lenses times the sale price. So it was corroborated in that way. But isn't the concern that the disgorgement, that they're being ordered to pay disgorgement on funds they never actually received? Well, that's what they say. That's what they say, but they... Well, counsel, you have the initial burden, correct, to show a reasonable approximation, and you provide a document that on its face shows that there are unpaid accounts, and yet the full amount is included in the total. Now, why does that constitute a reasonable use of that evidence? Why wouldn't there be a little bit more tailoring of the number to reflect what is in the database? Because... Well, one reason is we don't know the significance of the comment. Sure, there's a comment that says... Well, no, I understand that, but it isn't their evidence. It's your evidence, and you're trying to convince the court of the number, and it seems like you're just summing everything up and saying, there it is, but the document on its face raises some questions, doesn't it? It does. Our burden is not to come forward with evidence that is conclusive and that is completely consistent. Excuse me, but do I hear the ice breaking? You're on thin ice, counsel, on these questions. Are you sure you're making these concessions? I'm making concessions? Yes. I hope I'm not. Well, you said there are questions about whether these represent the actual sums paid. And when you concede that, then it's a matter of what do we do with that? I concede that the database says what it says, and so there's some information in there. But the burden on the government is... It's a low bar, the reasonable approximation. It says in the restatement that the purpose is just to determine that the disgorgement is not... And to show that they actually did take something in from their wrongdoing. How low can the bar go? And again, the court did not rely exclusively on the database. This was the court's call. We presented the evidence, and the court looked at all of the evidence and said, quote, the best evidence that I have shows over $50 million in revenue has been received. And the court pointed to, number one, the database, but also that that amount was corroborated by multiplying the number of lenses sold times the amount of each lens. And then the court also said that the bank deposits also supported its number because they only contained information through 2016. So although the bank deposits were lower, they did not contain the full period. The defendants also complained that they didn't get your disgorgement evidence as part of the Rule 26A disclosure process. So my question is, did they have adequate time to study your disgorgement evidence and have an opportunity to rebut it if they could? How did that play out? Their argument is that they were ambushed with their own sales records, with their own bank statements. This was all information that they had from the start, and our complaint specifically said we intend to seek disgorgement. Fairness, I don't think that's their argument. I think their argument is that on the face of the exhibits that you offered, the documents contained language such as amount due or partially paid or whatever the precise language was that demonstrates the amount that you tendered and the court used were facially inadequate, unreasonable. Well, that's what they're saying now. That wasn't their argument back then. Their argument was that we have been ambushed, unfairly surprised, we're shocked that you're going to use our database information to try to establish our gross receipts. In the way that you have used it. No, no. All we did was take the number that's in the database and total it. They had that information all along, and that's why reasonable approximation, or at least part of why reasonable approximation is not a high bar, because they're the ones who, they know what they took in. They know how much money they made. We don't know. They obstructed discovery. They had the document. They did not know how it was going to be used. And weren't they entitled to have some time to review that and say, this does not represent our receipts. These are the amounts billed. And it's a question how much of that money was actually paid. Did they make that argument after it was being presented? No, no, they didn't, because we did not use the database in that way. We said this is their database. We said this is the amount that you get if you just total it up. We said, Judge, this is the amount that you get if you include only the comments that include the word full, as in paid in full, which was a much lower amount. And when did they learn you were going to use the database? When did they learn? Well, they learned, I guess, they would have learned when we first requested it in discovery, which was at least well over a year before trial. They didn't produce it in discovery. They were ordered, compelled to produce it. They didn't. And so we finally got the database one month before trial, which is why we don't know what the comments mean. We weren't able to depose anybody about it. We figured they would probably call the witness, but they didn't. When you offered it into evidence, did they request a continuance to respond to it? No, not that I recall. They did file a motion in limine to exclude it before trial. And how long before the end of trial was that that you offered it? Maybe I should say how long before... They put on a defense? They didn't put on a defense. They're trying to hide the ball here. So how long before you closed? I believe it was in the early part of our case that it came in. But they knew before trial that we were intended to introduce the exhibit and that we would have the person who collected the database would testify about how he got the information, which is all he testified about. So, again, the issue is, yes, we have a threshold burden, but we have shown we have a database, we have the number of lenses that were sold, we have the price that they sold them at, and we have bank deposits through 2016. And the court, exercising its broad discretion, this court said in Maxon that the court has broad discretion in calculating the amount to be disgorged. The court, in exercising its discretion, found that the $50 million was the number that had the best evidence. And if that number is inaccurate, they could easily prove that, but they chose not to introduce any evidence at all. Did the bank deposits... Were the bank deposit amounts consistent with the summation of the database? Well, they cover different time periods, and so I think that's what the district court noted, that it supports the number, but the bank deposits number was smaller, but it only went through 2016. Was it proportionally smaller? Excuse me? Was it proportionately smaller? I mean, was it 10% of the... I haven't looked at that. I think the bank statements totaled to... It was $44 million. The bank statements totaled $44 million? Yes. And, in fact... I mean, this wasn't discussed at trial, but if you go through the database and you exclude all of the entries that say... that have the word due in them, as in an amount due, if you exclude all of those, the total is still $44 million. And $50 million is 15% more, but we're only talking about a reasonable approximation. So, again, this is a reasonable approximation. If, in fact, they did not take in $50 million, it was in their power to prove that, and it was their burden to prove that, because we came forward with evidence. Did they tender, in their contest of the amount, any affidavits demonstrating what their calculation is or make any effort to...? None. None. And even now, they've demonstrated they know how to try to introduce evidence after trial. They did it on other issues. But even now, on appeal, they still don't say, oh, no, we really made $25 million, or the correct number was $30 million, or the correct number was $2 million. They're hiding the ball. They know what they took in, but they obstructed discovery, then they refused to put on any evidence, and they're... they're trying to prevent... they're trying to escape any liability based on their own database, which, again, it's... When you sat together in the Klein-Becker case, you recognized that a defendant can't escape liability and discouragement based on their own poor record-keeping. Thank you. So the fact that their records may have some ambiguity or unclarity is not a basis to reduce the amount of discouragement, because it was in their power, it's always been in their power, to show, affirmatively, that a lesser amount is correct. Thank you very much. Your time has expired. I want to be clear that I'm not complaining about counsel because he's the appellate attorney. He wasn't there during the trial, but many of the things that he has told you in response to specific questions simply isn't so. Now, is it correct, though, that you have not tendered alternate data or alternate numbers that you contend are the correct number for calculating the... We do not believe that the burden shifted to us to show anything because they failed at the outset to make or show a reasonable approximation. The Tenth Circuit has adopted a standard for proof on damages when a legal determination such as the proper elements of an award of damages is reviewed, a de novo standard is applied. It's a question of law. We cited that Southern Colorado MRI Limited v. Med Alliance case for that proposition. That's the standard you apply. Do you agree that there were $44 million in bank deposits during the time? Oh, heavens no. The fact is... The bank statements don't show that much... What the government offered as the cumulative total of all bank deposits, including Solco and Exxon, who were not parties to this case, totaled $32 million. They offered $32 million as the proper amount in their closing argument, and that, in their initial proposed findings of facts and conclusions of law, was $32 million. But that number was flawed because there was no attempt to segregate revenue from the sale of stock versus revenue from the sale of lenses. And could they have done that with the information they received from you? They certainly could have. They certainly could have looked at the deposit slips. No one from the government side looked at any of the deposit slips, nor did they back out from their cumulative total any intercompany transfers. They simply aggregated it all. And even with that... Did you argue that to the court? Oh, yes. Oh, yes. In fact... But the court apparently didn't do that. No, and... In fact, I think everyone was surprised when the number came out at $51 million,  So what remedy would you like? Well, I think the government has had their day in court and they failed to prove their case. And I think that... You say that the evidence is there from which it can be computed. We're going to need expert witnesses. We're going to have to reopen discovery. Is there such a thing as a clean-hands doctrine that applies here? I don't think so. Not in a disgorgement case. It's equitable. Well, that's when clean-hands doctrine comes in, right? We have not... We have not even reached whether or not Section 48 that Congress adopted... Thank you very much, Counsel. I don't wish to be disrespectful. Your time is up. It is up. Thank you, Your Honor. Thank you so much. I appreciate the arguments this morning. The next case...